# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY<br>1400 Douglas Street<br>Omaha, NE  68179 | :<br>:<br>:<br>: |
| Plaintiff, | : CIVIL ACTION NO. _____ |
| v. | :<br>: |
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS<br>AND TRAINMEN<br>7061 East Pleasant Valley Road<br>Independence, OH 44131 | :<br>:<br>:<br>: |
| and | : |
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS<br>AND TRAINMEN/UNION PACIFIC CENTRAL<br>REGION GENERAL COMMITTEE OF ADJUSTMENT<br>320 Brookes Drive - Suite 115<br>Hazelwood, MO 63042 | :<br>:<br>:<br>:<br>: |
| and | : |
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS<br>AND TRAINMEN/UNION PACIFIC SOUTHERN<br>REGION GENERAL COMMITTEE OF ADJUSTMENT<br>607 W. Harwood Road<br>Hurst, TX 76054 | :<br>:<br>:<br>:<br>: |
| Defendants. | : |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Union Pacific Railroad Company ("Union Pacific") brings this Complaint seeking a declaratory judgment that an ongoing labor dispute is subject to mandatory and exclusive arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*  In support of its Complaint, Union Pacific avers as follows:

## PARTIES

1. Union Pacific is a Class I railroad that provides freight transportation services in 23 States in the western half of the United States. Union Pacific's headquarters building and principal place of business is 1400 Douglas Street, Omaha, Nebraska 68179. Union Pacific is a "carrier" within the meaning of the RLA, 45 U.S.C. § 151, First.

2. Defendant Brotherhood of Locomotive Engineers and Trainmen ("BLET") is an unincorporated labor organization in which employees participate and that exists for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of collective bargaining agreements ("CBAs"). BLET is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth. On Union Pacific, BLET represents employees in the craft or class of "locomotive engineer."

3. BLET operates through subordinate bodies known as "General Committees of Adjustment." The General Committees of Adjustment exist for the purpose of, among other things, dealing with carriers pursuant to the RLA concerning rates of pay, rules and working conditions, including negotiation and administration of CBAs, and are also "representatives" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. § 151, Sixth.

4. Two of the six General Committees of Adjustment representing Union Pacific employees also are named as defendants in this action: the BLET/UP Central Region General Committee of Adjustment, and the BLET/UP Southern Region General Committee of Adjustment. These defendants are collectively referred to herein as the "General Committees."

## JURISDICTION AND VENUE

5. Jurisdiction exists pursuant to the RLA, 45 U.S.C. §§ 151-188 and 28 U.S.C. §§ 1331, 1337.

6. Venue over this action properly lies in this Judicial District under 28 U.S.C. 1391(b)(1) and (2) because a substantial portion of the events giving rise to the claim took place in this Judicial District.

## THE RLA REQUIRES ARBITRATION OF MINOR DISPUTES

7. Under the RLA, disputes concerning the interpretation or application of CBAs are known as "minor disputes," and are subject to mandatory arbitration. The characterization of a dispute as a "minor dispute" does not reflect the importance or value of the dispute. Rather, the term "minor dispute" means that the dispute is one over the interpretation or application of an existing agreement, rather than a dispute over the formation of, or change to, the terms of an agreement. Section 3 of the RLA requires minor disputes to be resolved exclusively through arbitration before the National Railroad Adjustment Board ("NRAB"), or before an arbitration panel of coordinate jurisdiction established by the parties pursuant to the RLA (known as a Public Law Board or a Special Board of Adjustment). 45 U.S.C. § 153.

8. A minor dispute "relates either to the meaning or proper application of a particular provision [in a CBA] with reference to a specific situation or to an omitted case." *Consolidated Rail Corp. v. Ry. Labor Executives' Ass'n.,* 491 U.S. 299, 303-05 (1989) (*quoting Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)). "It is well established that collective bargaining agreements may include implied as well as express terms." *Brotherhood of Ry. Carmen v. Missouri Pacific R.R. Co.*, 944 F.2d 1422, 1429 (8th Cir. 1991) ("*BRC v. MoPac*"); *Conrail*, 491 U.S. at 311.

9. Under the RLA, a dispute is a "minor dispute" subject to mandatory arbitration so long as the rail carrier's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial." *Conrail,* 491 U.S. at 303-305; *BRC v. MoPac,* 944 F.2d at 1427. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute

is minor if the action is arguably justified by the terms of the parties' collective bargaining agreement." *Conrail*, 491 U.S. at 307. "[W]hen in doubt, the courts construe disputes as minor." *International Ass'n of Machinists & Aerospace Workers, District Lodge 19 v. Soo Line R.R. Co.*, 850 F.2d 368, 377 (8th Cir. 1988) ("*IAM v. Soo Line*") (*quoting Brotherhood of Loc. Eng'rs v. Atchison, Topeka & Santa Fe Ry Co.*, 768 F.2d 914, 920 (7th Cir. 1985)); *United Transp. Union v. Kansas City S. Ry. Co.*, 172 F.3d 582, 588 (8th Cir. 1999) ("*UTU v. KCS*").

10. While a minor dispute is being arbitrated, the "carrier may apply its reasonable interpretation of the disputed agreement." *BRC v. MoPac*, 944 F.2d at 1427 (*quoting IAM v. Soo Line*, 850 F.2d at 377). The Supreme Court has never recognized "a general statutory obligation on the part of an employer to maintain the status quo pending the [arbitrator's] decision." *Wheeling & Lake Erie Ry. v. Locomotive Engineers*, 789 F.3d 681, 691, 2015 BL 204654, 10 (6th Cir. 2015), citing *Conrail,* 491 U.S. at 304.

11. A union may not strike over a minor dispute; its sole recourse for an alleged contract violation is to pursue arbitration if the dispute is not resolved through the contractual grievance process. *Bhd. of R.R. Trainmen v. Chi. R. & I.R.R. Co.*, 353 U.S. 30, 39-42 (1957) ("*Chicago River*"); *BRC v. MoPac*, 944 F.d at 1427.

## THE PARTIES' COLLECTIVE BARGAINING AGREEMENTS

12. Union Pacific and BLET are parties to multiple collective bargaining agreements. These agreements, together with terms implied therein through past practice, course of dealing and management prerogative, establish the rates of pay, rules and working conditions of employees represented by BLET. Some of the parties' collective bargaining agreements are system-wide in scope; they cover all of the employees represented by BLET who are employed by Union Pacific. Other agreements cover only those portions of the system that correspond to the properties of formerly separate railroads that have since been merged into Union Pacific.

## DESCRIPTION OF THE MINOR DISPUTE

13. A dispute has arisen between Union Pacific and BLET concerning Union Pacific's right under its existing CBAs to require employees to complete a computer based training module describing Union Pacific's instructions for preventing the spread of the novel coronavirus that causes COVID-19, and to acknowledge that they will not intentionally disregard those guidelines.

14. The purpose of the COVID-19 Training Module is to remind employees of actions that will continue to keep them and other employees safe, such as proper hand washing, social distancing where possible and remaining home when ill. Locomotive engineers routinely come into physical contact with working surfaces and often work in proximity to other employees. Compliance with COVID-19 training is essential to protect Union Pacific employees and third parties against the spread of this disease.

15. The COVID-19 Training Module briefly describes COVID-19, including its most common symptoms, explains basic steps that employees can take to prevent catching or spreading it, and provides links to Union Pacific's COVID-19 webpage and state specific requirements. To complete the Training Module, employees are required to check off or "click" each box on the last screen that describes a COVID-19 safe practice, such as "Engage in social distancing and where social distancing is not practicable wear a face covering." The last box reminds employees that "Intentional disregard of these guidelines may result in disciplinary action."

16. Remarkably, BLET and the General Committees have challenged Union Pacific's right to require employees to undergo this training and affirm that they will not intentionally disregard Union Pacific's guidelines for preventing the spread of COVID-19 in the workplace. On June 12, 2020, Dana Marlow, the General Chairman of the BLET/UP Southern Region

General Committee of Adjustment sent a letter to Union Pacific objecting to the COVID-19 Training Module alleging that it represented a change in BLET-represented employees' working conditions about which Union Pacific was required to bargain. A copy of that letter is attached as Exhibit A. Mr. Marlow also stated that he "will instruct my members not to fill these out, and, if you do not retract the requirement that they attest to the items, we will have no choice but to fully and aggressively pursue our legal options under the Railway Labor Act."

17. On June 17, 2020, Ronnie Rhodes, the General Chairman for the BLET/UP Central Region General Committee of Adjustment sent a similar letter to Union Pacific in which he also objected to the COVID-19 Training Module. A copy of that letter is attached as Exhibit B. Mr. Rhodes also argued that Union Pacific was required to bargain before requiring BLET-represented employees to take the Training Module and click the boxes acknowledging that they had completed it. Mr. Rhodes concluded his letter, saying, "I am once again asking you to retract the instructions to attest to items listed in the COVID training module since they are changing the working conditions for our Members or I will have no choice but to fully and aggressively pursue our legal options under the Railway Labor Act."

18. Union Pacific disagrees with BLET's position. Union Pacific's position is that its existing collective bargaining agreements with BLET do not restrict Union Pacific's managerial right to provide training and instructions to its employees on its guidelines for preventing the spread of COVID-19 in the workplace and to require employees to confirm that they understand those guidelines and will not intentionally refuse to comply with them.

19. No provision of any collective bargaining agreement between the parties prohibits Union Pacific from requiring employees to complete such computer based training modules. No arbitration awards interpreting the parties' collective bargaining agreements support BLET's

position that Union Pacific is prohibited from requiring employees to acknowledge that they will not intentionally disregard the Company's guidelines to prevent the spread of COVID-19.

20. The past and accepted practice of the parties is that Union Pacific regularly requires employees to undergo training designed to protect the health and safety of Union Pacific employees, its customers, and the public. In addition, Union Pacific has used a variety of means to document that its employees represented by Defendants have received such training. Such means of verification have included, from time to time: written roll call sign-up sheets, computer verification of completion of training modules and other means. Union Pacific employees represented by Defendants are subject to discipline for violating Union Pacific's rules and instructions, whether or not the training module completed by the employees specifically references the possibility of discipline for noncompliance.

21. The current dispute constitutes a "minor dispute" as that term is used under the RLA. The dispute arises out of the interpretation or application of an existing agreement concerning rates of pay, rules and working conditions. And, Union Pacific's position with respect to the merits of the dispute is not "frivolous or obviously insubstantial."

22. Because Union Pacific has a non-frivolous basis for its position that it has the managerial right to require employees to complete the COVID-19 Training Module and complete the checklist acknowledging that they have been instructed on, and will not intentionally disregard, Union Pacific's instructions for preventing the spread of COVID-19 in the workplace. BLET's claim that Union Pacific is in violation of the parties' CBAs is a minor dispute subject to the exclusive jurisdiction of the NRAB.

### COUNT I – DECLARATORY JUDGMENT (MINOR DISPUTE)

23. Union Pacific incorporates by reference as if fully set forth herein each and every allegation of the preceding Paragraphs.

7

LEGAL\47148821\4

24. This Cause of Action arises under Sections 2 First and 3 of the RLA, 45 U.S.C. §§152 First, 153.

25. There exists a current, live and ripe controversy that warrants declaratory relief from this Court.

26. Union Pacific has existing CBAs with BLET, which remain in full force and effect. These agreements, together with implied terms, past practice and other established working conditions, set forth the terms and conditions of employment of Union Pacific's BLET-represented employees.

27. Union Pacific contends that its CBAs, as properly interpreted, do not prohibit Union Pacific from requiring employees to complete the COVID-19 Training Module and complete the checklist acknowledging that they have received Union Pacific's instructions on COVID-19 safe practices for preventing the spread of COVID-19 in the workplace. BLET disputes Union Pacific's interpretation of the applicable CBAs, and maintains that Union Pacific is in violation of the RLA as well as the parties' CBAs.

28. The dispute between BLET and Union Pacific is a minor dispute under the RLA, and thus subject to mandatory arbitration. The nature of the dispute is one that arises out of the interpretation or application of the parties' CBAs, and Union Pacific's position with respect to the merits of the dispute is not frivolous or obviously insubstantial.

29. Union Pacific has at all times been willing to comply with the procedures of the RLA and has exercised and is continuing to exercise reasonable efforts to resolve this dispute with BLET.

**PRAYER FOR RELIEF**

WHEREFORE, Union Pacific respectfully requests that the Court grant the following relief:

1. Issue a Judgment declaring that the present dispute concerning Union Pacific's requirement that employees complete the COVID-19 Training Module and complete the checklist acknowledging that they have received Union Pacific's instructions on COVID-19 safe practices for preventing the spread of COVID-19 in the workplace is a "minor dispute" under the RLA, and is subject to the compulsory and exclusive arbitration mechanisms set forth in section 3 of the RLA, 45 U.S.C. § 153;

2. Issue a Judgment declaring that Union Pacific may continue to require employees to complete the COVID-19 Training Module and complete the checklist acknowledging that they have received Union Pacific's instructions on COVID-19 safe practices for preventing the spread of COVID-19 in the workplace pending arbitration of the minor dispute over that subject;

3. Order BLET to pay the costs of these proceedings, including reasonable attorneys' fees; and

4. Grant Union Pacific such other and further relief as the Court may deem proper and just in the circumstances.

Respectfully submitted,

/s/ *Jacquelyn V. Clark*
JACQUELYN V. CLARK
Union Pacific Railroad
1400 Douglas Street STOP 1580
Omaha, NE 68179
(402) 544-3078 (phone)
(402) 501-2683 (fax)
jvclark@up.com

ROBERT S. HAWKINS (*pro hac vice pending*)
ANDREW J. ROLFES (*pro hac vice pending*)
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-2177 (phone)
(215) 717-9535 (fax)
rhawkins@cozen.com
arolfes@cozen.com

                    Counsel for Plaintiff
                    Union Pacific Railroad Company

Date:   June 23, 2020

LEGAL\47148821\4